IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | CASE NO.: 4:13-CR-385 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| **KAREN STARR,** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| Defendant. | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Defendant Karen Starr's Motion to Dismiss filed March 29, 2024. (ECF #70). For the following reasons, the Court denies Defendant's Motion.

**I. BACKGROUND**

On August 20, 2013, a federal grand jury indicted Defendants Karen Starr and Keelan Harris, charging them with one count of Conspiracy to Commit Wire Fraud, seven counts of Wire Fraud and four counts of Money Laundering. (ECF #75).

Defendants created Complete Developments, LLC ("CDL") and Investments International, Inc. ("I-3") and advertised that CDL would profit from foreign exchange trading, while I-3 would profit from buying high-return yield investments. (*Id.*). However, after soliciting more than 100 investors to invest in CDL and I-3, Defendants used the funds to pay salaries for themselves and their employees, as well as other expenses of the companies. (*Id.*). Defendants also engaged in "lulling" activities meant to dissuade investors from contacting law enforcement, as well as civil regulation activities. (*Id.*). Defendants gained upwards of $15.8 million from the CDL and I-3 investors. (*Id.*).

Co-Defendant Keelan Harris pled guilty in August 2015. (ECF #75). However, Defendant Karen Starr moved to the United Arab Emirates ("UAE") from her home country of Canada following a job offer in 2008. (ECF #70). As a result, she has not been arrested nor arraigned on the charges. (ECF #75).

After the federal grand jury indicted Defendant, the Government states that: (1) the FBI sent a fugitive letter for Defendant to its International Operations/Middle East Unit, (2) the Government issued a Red Notice for Defendant in January 2014, and (3) FBI Agent Hayes ("Hayes") worked with the FBI's legal attaché ("ALAT") to have Defendant returned to Canada. (ECF #75).

The first time Defendant had contact with the United States about the potential charges against her was in July 2012 during a phone interview with Hayes. (ECF #70; ECF #75). However, Defendant claims that she had no knowledge of any charges until she was arrested in the UAE on September 7, 2015 due to the Red Notice. (ECF #70).

Following her arrest, Defendant reached out via email to the U.S. Embassy in Abu Dhabi, as well as Hayes on September 21, 2015 and December 27, 2015, respectively. (*Id.*). Defendant's last contact with Hayes was on February 10, 2016 when he referred her to Mr. Hesham from FBI Dubai. (*Id.*).

On June 1, 2016, Defendant requested information about her Interpol status from Interpol and was formally notified of the Red Notice on September 9, 2016. (*Id.*). In addition, on June 20, 2016, Defendant was informed via email that the United States had a case against her alleging wire fraud; however, the indictment was not included. (*Id.*). On October 6, 2016, Defendant sent a money order to the U.S. District Court Clerk of Court requesting the indictment, which was forwarded to her. (*Id.*).

Defendant claims that the Government issued an extradition request for Defendant to be extradited to the United States. (*Id.*). Defendant also claims that the request was dismissed by the UAE on September 22, 2019 due to the Government not responding. (*Id.*). However, the Government responds that it would not have placed such an extradition request because there is no extradition treaty with the UAE. (ECF #75). The Government states that it had placed a request for Defendant to be deported to Canada. (*Id.*).

Defendant hired defense counsel in August 2022. (ECF #70). Subsequently, on August 19, 2022, defense counsel reached out to Assistant United States Attorney Healy ("AUSA Healy") requesting a date on which Defendant could voluntarily surrender. (*Id.*).

On October 6, 2022, AUSA Healy redirected defense counsel to Assistant United States Attorney Toepfer ("AUSA Toepfer"). (*Id.*). AUSA Toepfer denied defense counsel's request to have Defendant appear via Zoom because Defendant was required to appear in-person in the United States. (*Id.*). Defense counsel informed AUSA Toepfer that Defendant was unable to travel due to her Red Notice and requested the Government's help in getting Defendant to the United States. (*Id.*).

On October 19, 2022, AUSA Toepfer informed defense counsel that the Government needed to figure out whether the United States Marshal Service ("USMS") or FBI would have authority to arrest and transport Defendant. (*Id.*). In November 2022, AUSA Toepfer informed defense counsel that the Office of International Affairs was handling the case because Defendant was a Canadian citizen, living in the UAE, and indicted in the United States, which complicated the case. (*Id.*).

Defense counsel reached out to AUSA Toepfer in mid-January 2023, late February 2023, late March 2023, and late May 2023. (*Id.*). However, AUSA Toepfer did not have any updates

3

regarding Defendant's ability to return to the United States. (*Id.*). Defense counsel reached out to AUSA Toepfer again on June 21, 2023 expressing the desire to resolve Defendant's case; however, AUSA Toepfer informed defense counsel that the case was in the hands of the Office of International Affairs. (*Id.*).

As a result of this delay, Defendant claims various hardships. (*Id.*). She lost her job in the UAE after her arrest in September 2015 and has been arrested and imprisoned by the UAE in deplorable conditions due to her Red Notice status. (*Id.*).

Defendant filed a Motion to Dismiss the indictment on March 29, 2024, alleging violation of her Sixth Amendment right to a speedy trial. (ECF #70). The Government, conversely, denies the violation and argues that the Court should deny Defendant's Motion under the fugitive disentitlement doctrine. (ECF #75).

## II.  LAW AND ANALYSIS

### A. The Fugitive Disentitlement Doctrine Does Not Apply to Defendant as Defendant Is Not a Fugitive.

The fugitive disentitlement doctrine "limits access to the federal courts by a fugitive who has deliberately fled from custody." *Kacaj v. Gonzales*, 163 Fed.Appx. 367, 368 (6th Cir. 2006). Sixth Circuit cases have held that in order to apply the doctrine: (1) the defendant must be a fugitive, and (2) no special circumstances may exist that warrant an exception to the doctrine's application. *United States v. Contoguris*, No. 2:17-cr-223(3), 2018 U.S. Dist. LEXIS 241790, at *4 (S.D. Ohio Oct. 9, 2018); *see also, United States v. Adelakun*, No. 2:20-mj-30135, 2021 U.S. Dist. LEXIS 205685, at *5 (E.D. Mich. Oct. 26, 2021).

A "fugitive" is defined in the Sixth Circuit as someone who "conceal[s] [her]self with the intent to avoid prosecution." *United States v. Greever*, 134 F.3d 777, 780 (6th Cir. 1998). Intent to avoid prosecution can be inferred when a defendant knows that she is wanted and

4

subsequently fails to submit to an arrest. *Id.* Even if the defendant is a "fugitive," courts may nonetheless decline to apply the fugitive disentitlement doctrine if warranted by "special circumstances." *United States v. Contoguris*, No. 2:17-cr-223(3), 2018 U.S. Dist. LEXIS 241790, at *4 (S.D. Ohio Oct. 9, 2018).

Defendant did not "conceal [her]self" in the UAE. First, Defendant moved with her family and was living and working in the UAE. (ECF # 70). Second, the Government had Defendant's contact information as early as 2012, before the indictment had been returned. (*Id.*). Further, Defendant had contacted the Government multiple times while in the UAE. (*Id.*). Defendant has since had contact with various Government officials. (*Id.*). There is nothing in the record to suggest that Defendant has been concealing herself from the Government. As such, Defendant has not "conceal[ed] [her]self" and is not a fugitive.

In addition, the record does not support the assertion that Defendant "intent[ed] to avoid prosecution" by remaining in the UAE. It is undisputed that Defendant moved to the UAE in 2008 after accepting a job offer. (*Id.*; ECF #75). Also undisputed is that Defendant's move was before any FBI investigation had been opened and before any indictment had been returned. (*Id.*). The Government issued the Red Notice for Defendant in Interpol in January 2014. (ECF #75). The earliest time at which Defendant knew that she was wanted, rather than merely being on notice of potential charges, was when she was arrested in September 2015. (ECF #70). By that time, Defendant was unable to voluntarily travel to the United States without being arrested and requested the Government's help in doing so. (*Id.*). In fact, it appears from the record that the only reason Defendant has not returned to the United States is that the Government has not yet been able to aid in her travel. Thus, the facts do not support a finding that Defendant failed

5

to submit to an arrest knowing she was wanted. As such, Defendant did not "inten[d] to avoid prosecution," further supporting that Defendant is not a "fugitive."

The Court finds that Defendant is not a fugitive and the fugitive disentitlement doctrine does not apply. Therefore, the Court does not need to consider the presence of any special circumstances warranting an exception to its application.

### B. Defendant's Right to a Speedy Trial Was Not Violated as Defendant Did Not Timely Assert Her Right and the Government Acted Diligently.

The Supreme Court has provided a four-factor balancing test to determine whether a defendant's constitutional right to a speedy trial has been violated, requiring courts to weigh the following: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of her right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The Supreme Court requires courts to weigh both the conduct of the defendant, as well as the government. *Id.* None of the factors are dispositive and must be considered together, along with other relevant circumstances. *Id.* at 533.

#### *1. The delay has lasted over a decade and is, therefore, presumptively prejudicial and triggers judicial review of the remaining factors.*

The first factor acts as a "trigger mechanism" for courts to engage in the balancing test outlined by the Supreme Court. *Id.* at 530. Courts do not need to consider the remaining factors unless there is a delay which is "presumptively prejudicial." *Id.* Generally, "a one-year delay between accusation and the beginning of trial … is 'presumptively prejudicial.'" *United States v. Cope*, 312 F.3d 757, 777-78 (6th Cir. 2002) (citing *Doggett v. United States*, 505 U.S. 647, 652 (1992)).

More than ten years has passed since a federal grand jury in the Northern District of Ohio indicted Defendant. (ECF #70). Defendant and the Government agree that this delay exceeds

6

the one-year threshold and, therefore, is "presumptively prejudicial." (*Id.*; ECF #75). As such, the Court will consider the remaining factors.

### 2. The second factor weighs in the Government's favor because the Government's actions were diligent and not motivated by bad faith.

The second factor requires courts to decide "whether the government or the criminal defendant is more to blame for the delay." *Doggett*, 505 U.S. at 651. When analyzing this factor, different weights are assigned for different reasons. *Barker*, 407 U.S. at 531. Deliberate attempts to postpone trial or gain tactical advantage are weighed heavily against the government. *Id.*; *see also, United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003). However, more neutral reasons for delay, such as governmental negligence, are weighed less heavily against the government. *Barker*, 407 U.S. at 531. Finally, "valid reason[s]" for delay weigh in favor of the government. *United States v. Caballero-Melgar*, No. 21-6036, U.S. App. LEXIS 19783, at *29 (6th Cir. July 31, 2023). The government bears the burden of explaining the delay. *United States v. Williams*, 231 Fed.Appx. 457, 464 (6th Cir. 2007).

Once an indictment has been filed, the government bears the burden to diligently pursue the defendant, even if abroad. *United States v. Heshelman*, 521 Fed.Appx. 501, 506-07 (6th Cir. 2013). This burden is heavier when the defendant is unaware of the indictment. *Id.* at 506. The government acts negligently when it fails to diligently pursue the defendant. *United States v. McDonald*, 172 F.Supp.2d 941, 948 (W.D. Mich. 2001) (finding the government negligent for failing to extradite the defendant despite knowing his location and having an extradition treaty with the other country).

Where governmental delay is not motivated by "bad faith, harassment, or the government's desire to seek tactical advantage," this factor slightly favors the government. *United States v. Caballero-Melgar*, No. 21-6036, U.S. App. LEXIS 19783, at *29 (6th Cir. July

31, 2023) ("[W]hile neither party is completely free of blame … this factor lightly favors the government.").

When extradition efforts would be futile, the government is not negligent for not pursuing extradition. *Heshelman*, 521 Fed.Appx. at 507. In *Heshelman*, the court found that a criminal defendant's constitutional right to a speedy trial had been violated as a result of governmental negligence. *Id.* at 511. The court based its decision on the fact that no attempt at extradition had been made despite an extradition treaty between the United States and Switzerland. *Id.* at 508. Further, the court stated that when there is no extradition treaty between the countries at issue, the government does not need to attempt extradition to avoid being negligent. *Id.* at 507.

In this case, there is nothing in the record to suggest, nor does Defendant argue, that any delay was motivated by tactical gain or bad faith. (ECF #70; ECF #75). As such, this factor lightly favors the Government, as the Sixth Circuit found in *Caballero-Melgar*. Defendant only contends negligence on the part of the Government and that the Government has no valid reason for the delay. (ECF #70, ECF #76).

It is unrefuted that the Government faced a complicated extradition issue that the Court considers in deciding whether the delay was justified. Defendant is a Canadian citizen, living in the UAE and indicted in the United States. (ECF #70; ECF #76). There is no extradition treaty between the United States and the UAE that could have been used for the expedient return of Defendant to the United States. (ECF #75). As such, the Office of International Affairs had to navigate the case. (ECF #70). These facts are valid reasons for delay and, as such, weigh in favor of the Government.

Further, the Government acted diligently considering the complexity of the extradition issue. Before the Government knew exactly where Defendant was in September 2015, the

Government took diligent steps to locate her. First, the Government sent a fugitive letter for Defendant the day after the indictment. (ECF #75). Second, the Government issued a Red Notice for Defendant to have her deported to Canada since no extradition treaty existed between the United States and the UAE. (*Id.*). These facts also weigh in favor of the Government, as they show diligence in attempting to bring Defendant to trial.

Lastly, Defendant herself contributed to the delay. The latest possible time at which Defendant could have formally learned of her indictment was in October 2016 when she requested and received the indictment. (ECF #70). However, Defendant waited until August 2022 to hire defense counsel to begin actively resolving the case. (*Id.*). In fact, Defendant contends that the Government did not diligently pursue trial until she hired defense counsel in August 2022. (*Id.*). Thus, out of the overall delay, a minimum of six years and ten months is attributable to Defendant, which may have been reduced if Defendant had hired defense counsel sooner. These facts weigh against Defendant.

Defendant argues that the Government acted negligently because the Government knew Defendant's location and had contact with the Defendant but did not help her return to the United States. (ECF #76). This argument is unpersuasive. The Government actively attempted to bring Defendant to the United States by: (1) working to decide whether the USMS or FBI had the authority to arrest and transport Defendant, (2) handing the case over to the Office of International Affairs to navigate how to return Defendant to the United States, and (3) working with the FBI's ALAT to have Defendant returned to Canada. (ECF #70; ECF #75). Further, as the Sixth Circuit found in *Heshelman*, diligent pursuit does not require extradition attempts when such attempts would be futile due to the absence of a treaty. The UAE and the United States do

not have an extradition treaty; therefore, the Government cannot be said to have acted negligently for not attempting extradition.

Defendant further alleges that the Government did seek extradition to "North American/American" authorities and that the request was dismissed due to a lack of response from the Government. (ECF #77, Exhibit L). This is also unpersuasive. First, the mere phrase "North American/American" does not dispositively show that the extradition attempt was directed at the United States and not Canada. Further, even if it did, the Government is not required to seek extradition to the United States to have diligently pursued trial.

Lastly, Defendant relies on *McDonald* to persuade the Court into finding that the Government acted negligently in pursuing Defendant and prosecution. This case is readily distinguishable and provides little direction. First, in *McDonald*, the Government was found to be negligent for not seeking extradition when an extradition treaty existed between the countries. *McDonald*, 172 F.Supp.2d at 948. Second, the court in *McDonald* based its decision on the notion that the government had made "no serious attempt" to find the defendant. *Id.* Lastly, the government in *McDonald* had provided a variety of inconsistent explanations that detracted from its credibility. *Id.* at 947. Conversely, in the instant case, no extradition treaty exists between the United States and the UAE. (ECF #75). In addition, the Government had made attempts at locating Defendant from the start of the case including: (1) filing a fugitive letter the day after the indictment and (2) issuing a Red Notice for Defendant in Interpol. (*Id.*). Finally, the Government has remained consistent in its explanation of the delay: that the absence of an extradition treaty with the UAE made returning the Defendant to the United States complicated. (*Id.*).

10

Therefore, while no parties are completely blameless for the more than decade-long delay, the Government has explained the delay with valid reasons and acted diligently. As such, the second factor weighs against Defendant.

> 3. ***The third factor weighs heavily against Defendant because she waited at least eight years to assert her speedy trial right, a substantial portion of the overall delay.***

The third factor acknowledges that a defendant has some responsibility to assert her right to a speedy trial. *Barker*, 407 U.S. at 531. Whether and how a defendant asserts this right is closely tied to the other factors in the balancing test. *Id.* Thus, strong evidentiary weight is given in favor of a defendant who has asserted her right. *Id.* at 531-32. Conversely, a defendant who does not properly assert her right will have a difficult time proving she was deprived of it. *Id.* at 532. A defendant properly asserts her constitutional right to a speedy trial by filing a motion to dismiss the indictment. *Wilson v. Mitchell*, 250 F.3d 388, 396 (6th Cir. 2001). *See also, State v. Brillon*, 183 Vt. 475, 495-96 (Vt. Sup. Ct. 2008), *rev'd on other grounds, Vermont v. Brillon*, 556 U.S. 81 (2009) (finding that a defendant asserted his speedy trial right by "repeatedly and adamantly demand[ing]" trial).

The third factor is measured by how quickly the defendant asserts her right to a speedy trial relative to the overall delay. *Rice v. Warden, Warren Corr. Inst.*, 786 Fed.Appx. 32, 36 (6th Cir. 2019); *see also, Schreane*, 331 F.3d at 557 (finding that a defendant who waited four months had not timely asserted his speedy trial right in light of a twenty-nine month delay).

Defendant contends that the Government conceded this factor. The Court disagrees, as the Government argues that this factor weighs in its favor. (ECF #75). The Court will weigh this factor accordingly.

11

In this case, there are two potential times at which Defendant may have asserted her speedy trial right. First, Defendant filed her motion to dismiss the indictment on March 29, 2024. (ECF #70). Second, Defendant hired defense counsel and began to contact AUSA Healy expressing the desire to resolve the case and set a date for voluntary surrender in August 2022. (*Id.*). Prior to August 2022, Defendant was merely making phone calls and sending emails to gather information about her case. (*Id.*). Thus, August 2022 is the earliest date that Defendant can argue she was "repeatedly and adamantly demand[ing]" trial.

A federal grand jury indicted Defendant in August 2013. (ECF #75). Therefore, at least eight years after the indictment had passed before Defendant properly asserted her right to speedy trial. The overall delay in this case is nearing eleven years. (ECF #70). In *Schreane*, only four months out of a twenty-nine month delay was needed for the court to decide that the defendant had not timely asserted his right. Defendant in the instant case waited significantly longer than the defendant in *Schreane*. As such, Defendant did not timely assert her speedy trial right and the third factor weighs heavily against her.

Defendant relies on *Brillon* to persuade the Court that she timely and properly asserted her speedy trial right. *Brillon* is readily distinguishable and provides little direction. The defendant in *Brillon* was actively participating in litigation by: (1) unequivocally stating that he wanted to be tried, (2) asking for new attorneys if the case was not proceeding within a reasonable time, and (3) requesting multiple times to be tried without such demand from his counsel. *State v. Brillon*, 183 Vt. 475, 495-96 (Vt. Sup. Ct. 2008), *rev'd on other grounds, Vermont v. Brillon*, 556 U.S. 81 (2009). Conversely, in the instant case, Defendant was not participating in the litigation process to that extent. Defendant merely made phone calls and

emails prior to August 2022 and has never unequivocally stated that she wanted to go to trial. (ECF #70).

Defendant also relies on *McDonald* to move the Court that she timely and properly asserted her speedy trial right. Again, *McDonald* is readily distinguishable as Defendant omits additional factors that the court relied on in deciding that the defendant had asserted his speedy trial right. The defendant in *McDonald* had repeatedly contacted the government about voluntary surrender from early on in his case. *McDonald*, 172 F.Supp.2d at 950. In this case, Defendant failed to timely assert her right. Even more, unlike *McDonald*, Defendant did not begin discussions with the Government about returning to the United States until August 2022, late into her case. (ECF #70).

Therefore, Defendant failed to properly assert her right to a speedy trial in a timely manner. As a result, the third factor weighs heavily against Defendant.

### 4. *The fourth factor weighs slightly in Defendant's favor because the length of the delay creates a presumption of prejudice that is not refuted by the Government.*

The fourth factor requires courts to evaluate prejudice to the defendant based on three interests: (1) preventing "oppressive pretrial incarceration," (2) minimizing the defendant's "anxiety and concern," and (3) limiting damage to the defense. *Barker*, 407 U.S. at 532. There is a presumption of prejudice when the delay is attributable to bad faith. *Wilson*, 250 F.3d at 396. However, even in the absence of bad faith, "delay alone may create a presumption of bad faith" with strength increasing as the length of the delay increases. *Darnell v. Berry*, No. 98-5494, 1999 U.S. App. LEXIS, at *5 (6th Cir. July 8, 1999); *see also, Doggett*, 505 U.S. at 658 (finding presumed prejudice from a delay "six times as long" as that needed to trigger judicial review).

Defendant contends, and the Government acknowledges, that Defendant has experienced prejudice resulting from the delay. (ECF #70; ECF #75). In addition, while Defendant does not allege that the Government acted in bad faith, Defendant is still entitled to a presumption of prejudice due to the lengthiness of the delay. As the Supreme Court found in *Doggett*, a delay "six times as long" as that needed to trigger judicial review creates a presumption of prejudice. In this case, the delay is over ten times as long as that needed to trigger judicial review. (ECF #70).

Therefore, Defendant is entitled to a presumption of prejudice that is not refuted by the Government. As such, the fourth factor weighs in favor of the Defendant.

### III. CONCLUSION

The fugitive disentitlement doctrine does not apply to this case since Defendant is not a fugitive; as such, Defendant was lawfully entitled to have her speedy trial claim adjudicated.

The Government's valid reasons for delay, lack of bad faith or negligence, and Defendant's failure to timely assert her speedy trial right heavily outweigh the presumption of prejudice Defendant experienced. Therefore, the Court **DENIES** Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

   s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: August 5, 2024**

14